DENNIS, Judge.
This is an action for a declaratory judgment recognizing plaintiff’s ownership of immovable property.
The facts are not in dispute. Lena Graham owned an undivided Ysoth interest in a lot in the City of Shreveport. Sometime in March, 1950 by a written act she appointed Willie Johnson her attorney in fact and empowered him to sell and warrant title to her interest in the property to whomever he deemed advisable. By a deed dated July 23, 1951 and recorded July 24, 1951, Lena Graham sold her undivided interest to her sons, Claude C. Graham and Arthur Graham, the defendants herein. In this deed Lena Graham disregarded the power of attorney and acted for herself. Seven days later Vera G. Elflein, the plaintiff, purported to acquire Lena Graham’s interest in the property, along with the undivided interests of the several other co-owners, by a warranty deed dated and recorded July 31, 1951, which Willie Johnson signed for Lena Graham as her agent and attorney in fact. The written power of attorney described above was also recorded July 31, 1951. Lena Graham died, apparently after both deeds had been recorded, and the defendants, Claude C. Graham and Arthur Graham, who accepted her succession unconditionally, were recognized as her children and heirs and sent into possession by a judgment dated April 8, 1971.
*671 The plaintiff has been in continuous, open possession since receiving the deed to the property. In fact she has improved the premises, rented it to tenants, collected rentals, and managed it as her rental property.
At the trial herein Vera G. Elflein testified that she had her attorney examine the title to the property before her purchase. She had misplaced his title opinion letter, but she recalled that it had stated there were no defects in the title. After the purchase she was informed by someone in the tax collector’s office that his records reflected that other persons owned an interest in the property. Upon investigating Mrs. Elflein discovered the facts leading to this lawsuit.
The plaintiff contended below that the defendants, by virtue of their unconditional acceptance of their mother’s succession, had assumed the obligation of warranty set forth in the deed executed in her behalf by her agent, and, therefore, defendants were estopped to controvert the provisions of the deed; alternatively, plaintiff asserted that she had established ownership through 10 years possession and acquisitive prescription. The district court rendered judgment for the defendants rejecting the plaintiff’s demands.
The issues presented are:
1. Did the recordation of the deed from Lena Graham to defendants, coupled with the fact that Mrs. Elflein’s attorney examined title to the property prior to her purchase, constitute notification to Mrs. El-flein that the power of attorney held by Willie Johnson had been revoked?
2. Did these facts render it impossible for Mrs. Elflein to act in good faith in accepting a deed to Lena Graham’s interest in the property from Willie Johnson?
3. By accepting Lena Graham’s succession unconditionally did defendants become estopped to deny the obligation of warranty expressed in the deed executed for her by Willie Johnson?
The most pertinent Civil Code Articles are:
Art. 2985. A mandate, procuration or letter of attorney is an act by which one person gives power to another to transact for him and in his name, one or several affairs.
Art. 3027. The procuration expires: By the revocation of the attorney. * * *
Art. 3028. Except in the case of irrevocable powers of attorney, as described in the preceding article, the principal may revoke his power of attorney, whenever he thinks proper, and, if necessary, compel the agent to deliver up the written instrument containing it, if it be an act under private signature.
Art. 3029. If the principal only notifies his revocation to the attorney, and not to the persons with whom he has empowered the attorney to transact for him, such persons shall always have the right of action against the principal to compel him to execute or ratify what has been done by the attorney; the principal has, however, a right of action against the attorney.
Art. 3033. In the cases above enumerated, the engagements of the agent are carried into effect in favor of third persons acting in good faith.
Art. 3479. To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must occur: 1. Good faith on the part of the possessor. * * *
The plaintiff concedes that the act of sale, whereby Lena Graham acting in her own behalf conveyed her interest in the property, amounted to a revocation of the power of attorney granted Willie Johnson. It has long been established that an agency to sell is impliedly revoked by the sale of the property by the owner. A. Torre & Company v. Thiele, Seiler & Company, 25 La.Ann. 418 (1873). The *672 plaintiff contends, however, that actual notification of revocation of the agent’s mandate must be given to third persons by the principal and that the recordation of the deed in this case, despite the fact that her attorney had examined title to the property, did not constitute notice to her.
 On the other hand, because Mrs. Elflein did investigate the title to the property involved here the defendants argue that knowledge of the titles recorded in their names clearly was imputed to her. In similar situations, for purposes of deciding whether a purchaser was in good faith and entitled to acquire property by the prescription of 10 years, the courts have formulated a policy concerning 'when a purchaser shall be deemed to have notice of a matter filed in the public records. The existence of a title recorded in the name of a person other than the vendor does not of itself deprive the vendee of the presumption that he acquired the property in good faith. He may purchase without any investigation of the title and be protected by the prescription of ten years if the other essentials exist. However, if, instead of relying on the faith of his vendor’s title, he institutes an investigation into its validity, he is then bound by what the record reveals and cannot claim to be in good faith if the record discloses a defect in the title of his vendor. Martin v. Schwing Lumber & Shingle Company, 228 La. 175, 81 So.2d 852 (1955); Knight v. Berwick Lumber Company, 130 La. 233, 57 So. 900 (1912); Dinwiddie v. Cox, 9 So.2d 68 (La.App.2d Cir. 1942).
The same policy should apply here. It appears to have been the intention of the redactors of the Civil Code to require that a person relying upon a transaction with an agent have substantially the same kind of good faith as one who relies upon a plea of ten years acquisitive prescription. Article 3033 expressly states that a third person “acting in good faith” may enforce the engagements of an agent whose powers have been revoked. “Good faith”, according to the cases dealing with the prescription of ten years, demands a firm and positive belief by the buyer that the seller had a valid title. Knight v. Berwick Lumber Company, 130 La. 233, 57 So. 900 (1912); Board of Commissioners v. Elmer, 268 So. 274 (La.App.4th Cir. 1972). We think the Code articles regarding mandate reflect an intention to demand of a third person seeking to enforce a contract against a principal a firm and positive belief that the agent was authorized by his principal to enter the transaction. Therefore, we conclude that the same quality of knowledge which is destructive of a purchaser’s right to place faith in his vendor’s title also destroys his right to rely upon the power of attorney held by an agent.
It is unnecessary for us to decide the ultimate question implied by this case: May a vendee, who acquires immovable property from an agent acting under a written power of attorney authorizing him to sell to whomever he deems advisable, rely solely upon the mandate and have a firm and positive belief therein without investigating the agent’s authority or the public records relating to the property ? We do not reach this question because Mrs. Elflein did investigate the records and is bound by what they revealed.
Prior to Mrs. Elflein’s purchase on July 31, 1951 the records disclosed a title to an undivided %oth interest of the property in the names of Claude C. Graham and Arthur Graham and reflected that she could acquire only an undivided 4%oths interest in the property. Moreover, the records revealed that she was dealing with a person devoid of authority to act for Lena Graham. Since she admittedly examined the title to the property before her purchase, Mrs. Elflein was given notice of what the record revealed, viz., that Willie Johnson’s authorization to warrant title to the property for Lena Graham had been revoked, and that Lena Graham did not have a valid title to an interest in the property. Because she had notice of these facts, Mrs. Elflein did not acquire a right of action under LSA-C.C. Art. 3029 to compel Wil *673 lie Johnson’s former principal, Lena Graham, to execute or ratify what was done by her former agent, and she cannot claim to be a possessor of the property in good faith as required by LSA-C.C. Art. 3479 for purposes of acquisitive prescription.
In view of the fact that no obligation to warrant the title of the property was imposed upon Lena Graham by the act of Willie Johnson, it is unnecessary for us to consider whether Lena Graham’s heirs would have been bound thereby if such an obligation had existed.
The defendants prayed only for a rejection of the plaintiff’s demands at her cost. The judgment of the District Court to this effect is correct. Let the cost of the appeal be assessed to the appellant.
Affirmed.